UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAUDIA CISNEROS,<br><br>Plaintiff,<br><br>v.<br><br>UROVANT SCIENCES LTD., JAMES ROBINSON, MYRTLE POTTER, JAMES HINDMAN, SEF P. KURSTJENS, PIERRE LEGAULT, and SHIGEYUKI NISHINAKA,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction announced on November 12, 2020, pursuant to which Urovant Sciences Ltd., ("Urovant Sciences" or the "Company"), will be acquired by Sumitovant Biopharma Ltd., ("Parent") and Titan Ltd. ("Merger Sub"), a Bermuda exempted company and a wholly owned subsidiary of Parent.

2. Parent corporation owns the majority of Urovant Sciences stock and is wholly owned subsidiary of Sumitomo Dainippon Pharma.

3. Parent owns approximately 72.4 %, of the Company's outstanding common stock and controls shares of Company's common stock.

4. On November 12, 2020, Urovant Sciences' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the

"Merger Agreement"), pursuant to which Urovant Sciences stockholders will receive $16.25 per share ("Merger Consideration") in cash for each share of Urovant Sciences stock they own (the "Proposed Transaction").

5. On December 29, 2020, in order to convince Urovant Sciences stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

6. The Proxy omits material information with respect to the Proposed Transaction, which the Defendants knew or should have known about, which renders the Proxy false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

7. In addition, Urovant Sciences stockholders will soon vote on the Proposed Transaction at a special meeting (the "Stockholder Vote") without the benefit of the material information. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Urovant Sciences stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

8. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum

contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Urovant Sciences common stock.

12. Defendant Urovant Sciences is a Bermuda Corporation and a party to the Merger Agreement. UROV common stock is traded on the NASDAQ under the ticker symbol "UROV."

13. Defendant James A. Robinson is President Chief Executive Officer and a director of the Company.

14. Defendant Myrtle Potter is Chairwoman and a director of the Company.

15. Defendant James Hindman is a director of the Company and a member of the special committee of the Board (the "Special Committee").

16. Defendant Sef P. Kurstjens is a director of the Company and a member of the Special Committee.

17. Defendant Pierre Legault is a director of the Company and a member of the Special Committee.

18. Defendant Shigeyuki Nishinaka is a director of the Company.

## FACTS

19. Urovant Sciences is a clinical-stage biopharmaceutical company focused on developing and commercializing innovative therapies for urologic conditions. The Company's goal is to be a leading urology company by developing, commercializing, and acquiring innovative therapies. Urovant Sciences' lead product candidate, vibegron, is an oral, once-daily, small molecule that was observed to be a highly selective agonist of the human beta-3 adrenergic receptor in *in vitro* assays.

20. Parent is an exempted company incorporated with limited liability under the laws of the Cayman Islands. Parent was formed solely for the purpose of entering into the Merger Agreement and the related financing agreements and consummating the Proposed Transaction.

21. Merger Sub is a Bermuda exempt company and a wholly owned subsidiary of Parent. Merger Sub was formed solely for the purpose of entering into the Merger Agreement and consummating the Proposed Transaction. At the effective time of the Proposed Transaction, Merger Sub will cease to exist.

22. On November 12, 2020, Urovant Sciences' Board caused the Company to enter into the Merger Agreement.

23. Pursuant to the terms of the Merger Agreement, Urovant Sciences stockholders will receive $16.25 in cash for each share of Urovant Sciences common stock they own in an all-cash merger.

24. According to the press release announcing the Proposed Transaction:

**IRVINE, Calif. & BASEL, Switzerland, November 12, 2020/Business Wire** – Urovant Sciences (Nasdaq: UROV) announced today that it has entered into a definitive agreement in which Sumitovant Biopharma will acquire Urovant Sciences for $16.25 per share or approximately $584 million in total equity value on a fully diluted basis in an all-cash merger. The price represents a 96% premium

over Urovant's closing share price of $8.28 on November 12, 2020 and a premium of 92% to Urovant's 30-day volume weighted average share price on November 12, 2020. Sumitovant is currently Urovant's largest shareholder with approximately 72% equity ownership of the company.

The offer was accepted by a special independent committee of the Urovant Board of Directors and was unanimously approved by the boards of directors of Urovant and Sumitovant.

"After careful consideration and consultation with our financial advisors, the special committee of the Urovant Board of Directors has found that Sumitovant's offer represents exceptional value for shareholders," said Pierre Legault, lead independent member of the Urovant Board of Directors and chairman of the special committee.

"Our business is growing, and we remain focused on the potential opportunity to launch vibegron in 2021, pending FDA approval," said James Robinson, president and chief executive officer of Urovant Sciences. "Sumitovant is our largest investor, and we have been partnering closely with them on plans to efficiently launch vibegron and achieve scale as quickly as possible. We believe that this investment represents a vote of confidence in Urovant's future success and will put us in an even stronger position to bring vibegron to market as a new treatment option for patients with overactive bladder and to continue advancing our promising development pipeline."

Lazard is acting as exclusive financial advisor to the special committee of Urovant's board of directors and O'Melveny & Myers is serving as the special committee's legal counsel. Citi is acting as exclusive financial advisor to Sumitovant and Jones Day is serving as Sumitovant's legal counsel.

***Transaction Details***
Under the terms of the agreement, a wholly owned subsidiary of Sumitovant will merge with and into Urovant with Urovant surviving the merger as a wholly owned subsidiary of Sumitovant. In the merger all outstanding shares of Urovant stock (other than those held by Sumitovant) will be cancelled and converted into the right to receive $16.25 per share. The closing of the merger is subject to certain limited customary conditions, including the approval of a majority of the minority shareholders. The transaction is expected to close in the first quarter of 2021, subject to approval by the minority shareholders.

Following the transaction, Urovant will become a wholly owned subsidiary of Sumitovant, with the flexibility to continue investing in the development and launch of leading-edge urology products for patients with high unmet medical need. The company will continue to be based in Irvine, California.

The company continues to expect FDA action on its New Drug Application submission for vibegron in the U.S. by December 26, 2020.

***

25.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction and the Defendants have not actively sought out competing offers to test the market.

26.     It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

27.     Section 5.03 of the Merger Agreement provides for a "no solicitation" clause that prevents Urovant from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> Section 5.03 <u>No Solicitation by the Company; Company Recommendation</u>.
>
> (a) From the Agreement Date until the earlier of the Effective Time or the date, if any, on which this Agreement is terminated pursuant to <u>Section 8.01</u>, except as explicitly permitted by <u>Section 5.03(c)</u> and <u>Section 5.03(d)</u>, the Company will not, and will cause each of the Company Subsidiaries to not, and will instruct the Representatives of the Company and the Company Subsidiaries to not, and to not publicly announce any intention to, directly or indirectly (i) solicit, initiate, knowingly encourage or knowingly facilitate any inquiry, discussion, offer or request that constitutes, or would reasonably be expected to lead to, an Alternative Proposal (an "<u>Inquiry</u>") (it being understood and agreed that ministerial acts that are not otherwise prohibited by this <u>Section 5.03</u> (such as answering unsolicited phone calls) will not be deemed to "facilitate" for purposes of, or otherwise constitute a violation of, this <u>Section 5.03</u>); (ii) furnish or cause to be furnished to any Person or "Group" (as such term is defined in Section 13(d) under the Exchange Act) any non-public information with respect to any Inquiries or the making of any proposal that constitutes, or would be reasonably expected to result in, an Alternative Proposal; (iii) enter into, continue or maintain discussions or negotiations with any Person (other than Parent, Merger Sub and their respective Affiliates) with respect to an Inquiry or an Alternative Proposal (other than informing Persons of the provisions set forth in this <u>Section 5.03</u> or contacting any Person making an Alternative Proposal to ascertain facts or clarify terms and conditions of such Alternative Proposal for the sole purpose of the Special Committee reasonably informing itself about such Alternative Proposal); (iv)

6

approve, agree to, accept, endorse or recommend any Alternative Proposal; (v) submit to a vote of its shareholders any Alternative Proposal; (vi) effect any Adverse Recommendation Change; provided, that, subject to compliance by the Company with the terms of this Section 6.03, neither the (1) the determination by the Special Committee in accordance with Section 5.03(d) that an Alternative Proposal constitutes a Superior Proposal, or (2) the delivery by the Company of the notice required by Section 5.03(d) shall in and of themselves constitute an Adverse Recommendation Change); or (vii) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument providing for an Alternative Proposal. The Company will, and will cause the Company Subsidiaries to, and will instruct its and their Representatives to, cease immediately and cause to be terminated any and all existing activities, discussions or negotiations, if any, with any third party and its Representatives with respect to any Alternative Proposal and will use its reasonable best efforts to cause any such third party (together with its Representatives) that has executed a confidentiality agreement in connection with any Alternative Proposal, within the 12-month period prior to the Agreement Date, and that is in possession of confidential information heretofore furnished by or on behalf of the Company or any of the Company Subsidiaries in connection with the consideration of an Alternative Proposal (and all analyses and other materials prepared by or on behalf of such Person that contain, reflect or analyze that information) to return or destroy all such information as promptly as practicable. It is agreed that any violation of the restrictions on the Company set forth in this Section 5.03 by any Representative of the Company or any of the Company Subsidiaries will constitute a breach of this Section 5.03 by the Company

28. In addition, Section 8.2 of the Merger Agreement requires Urovant Sciences to pay a $13,620,000 "termination fee" to Parent in the event this agreement is terminated by Urovant and improperly constrains the Company from obtaining a superior offer.

29. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

30. As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

31. First, the Proxy omits material information regarding the background of the Proposed Transaction.

32. For example, the Proxy, however, fails to disclose (i) whether any other parties

expressed interest in acquiring the Company and (iii) whether the Company explored merger partners other than Parent. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders.

33. Similarly, no one conducted a market check during the sales process, including the Special Committee nor its financial advisor Lazard Frères & Co. LLC ("Lazard"). A market check could have drawn out market interest in the Company, and acted as leverage for the Company to demand a better price.

34. The Proxy also omits the basis for (i) appointing defendant Hindman to the Board in May 2020 and (ii) appointing defendants Legault, Kurstjens, and Hindman to the Special Committee. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders.

35. Second, the Proxy omits material information regarding Urovant Sciences' financial projections.

36. With respect to Urovant Sciences' financial projections, the Proxy fails to disclose all line items used to calculate Gross Profit, Operating Income (EBIT), Unlevered FCF, EBITDA, and Tax-Effected NOL Benefit. The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

37. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

38. Third, the Proxy omits material information regarding the analysis performed by

the Special Committee's financial advisor Lazard in connection with the Proposed Transaction.

39. With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the range of discount rates of 8.50% to 11.5%, (ii) the Company's weighed average cost of capital using the mid-year convention, (iii) estimated probability-adjusted, after-tax unlevered free cash flows to be generated by Urovant Sciences from December 31, 2020 through March 31, 2039, (iv) the range of terminal values for Urovant Sciences, (v) the individual inputs and assumptions underlying a terminal growth rate of (30%) – (10%), and (iv) the Special Committee's basis for assuming a future equity raise by the Company of $350 million net of 6% underwriter's fee in equity financing raised at a 17.5% discount to the 15-day volume weighted average price of a Urovant Sciences common share. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders and provide stockholders with full and relevant information in considering how to vote.

40. With respect to Lazard's *Selected Public Companies Analysis*, the Proxy fails to include the individual multiples and metrics for the companies observed by Lazard in the analysis. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders and provide stockholders with full and relevant information in considering how to vote.

41. With respect to Lazard's *Selected Precedent Transactions Analysis*, the Proxy fails to include the individual multiples and metrics for the transactions observed by Lazard in the analysis. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders and provide stockholders with full and relevant information in considering how to vote.

42. With respect to Lazard's *Premia Paid Analysis*, the Proxy fails to include the individual premiums and transactions observed by Lazard in the analysis. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders and provide stockholders with full and relevant information in considering how to vote.

43. With respect to Lazard's *Research Analyst Price Targets*, the Proxy fails to include the individual price targets observed by Lazard in the analysis. This information must be disclosed to make the Proxy not materially misleading to Urovant Sciences stockholders and provide stockholders with full and relevant information in considering how to vote.

44. The omission of the above-referenced material information renders the Proxy false and misleading.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. Defendants issued the Proxy with the intention of soliciting stockholder support

for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

50. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

51. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

56. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act,

as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 27, 2021

        **MOORE KUEHN, PLLC**

        */s/Justin Kuehn*
        Justin A. Kuehn
        Fletcher W. Moore
        30 Wall Street, 8th floor
        New York, New York 10005
        Tel: (212) 709-8245
        jkuehn@moorekuehn.com
        fmoore@moorekuehn.com

        *Attorneys for Plaintiff*